## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JOSHUA DOW and
RACHEL DOW,

                    Plaintiffs,

v.                                                    CIVIL ACTION NO.   3:19-0486

LIBERTY INSURANCE COMPANY,

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' and Defendant's Cross-Motions for Summary Judgment. ECF Nos. 53, 54. The Court held a Pretrial Conference to take evidence and hear arguments on September 27, 2021. Following this Conference, the Court directed Plaintiffs to file a supplemental brief addressing an issue raised at the hearing regarding the policy language relied on by Defendant to exclude coverage for the damage to Plaintiffs' home. After both parties briefed this issue, the Court held a Motion Hearing on November 4, 2021. For the following reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

### BACKGROUND

Plaintiffs Joshua and Rachel Dow purchased their home at 1017 Moss Creek Drive in Hurricane, WV in March of 2018. *Pls.' Am. Compl.*, ECF No. 21 ¶¶ 8, 12. This property is contiguous to the Valley Park Wave Pool. *Id.* ¶ 13. Before purchasing the home, Plaintiffs were required by their lender to conduct an appraisal and a professional inspection of their home. *See Pls.' Mot. for Summ. J. Exs. A & B*, ECF Nos. 54-1, 54-2. These inspections showed that there

was no evidence of prior or historical water-related damage in the crawlspace area. *See* ECF No. 54-1, at 22. After Plaintiffs purchased the home, they entered into a contract for first party insurance with Defendant Liberty Insurance Company (Policy No. H37-281-661959-4083, effective 3/19/2018 through 3/19/2019). *See* ECF No. 54-3.

As of June 2018, Plaintiffs noticed water entering their property and leaking into the crawl space of their home. ECF No. 21 ¶ 18. The water flowed from the edge of a ditch on an adjoining property into their yard. *See Def.'s Mot. for Summ. J. Ex. B*, ECF No. 53-2. This ditch ended 20-30 feet from Plaintiffs' property and had carried water downhill toward the river for several years, even before the nearby Wave Park was built. *See Def.'s Resp. Ex. A*, ECF No. 59-1, at 18–19. For many years, this ditch carried water without damaging Plaintiffs' home. ECF No. 21 ¶ 15. However, the Putnam County Commission built a maintenance building on the property at the Wave Park in 2018, which raised the elevation of the land. *Id.* ¶ 16. Construction on the maintenance building ended in March of 2018. *Id.* ¶ 18. Because of the elevation change, heavy rain and water problems at the Wave Park overwhelmed the ditch and forced water into Plaintiffs' yard, which entered the crawl space of their home. *Id.* ¶ 20.

On November 6, 2018, Plaintiffs sent a letter to Defendant notifying them of the water damage to their home and brought a claim under their insurance policy. *See* ECF No. 54-4. The Claim Diary maintained by Defendant showed that the loss was reviewed and the file opened on November 15, 2018. ECF No. 54-5 at 2. Plaintiff Mrs. Dow spoke to a Claims Resolution Specialist and explained how the water was entering Plaintiffs' property through the adjoining property due to activities at the Wave Park. *Id.* She also explained that Putnam County claimed they were not responsible for the damage. *Id.* The Claims Specialist then called and left a voice message for the Commission to discuss the damage to Plaintiffs' home. *Id.* She left a message

with Jared Dean's secretary, who advised the Claims Specialist that the County was in litigation over the matter. *Id.* The Claims Specialist's notes indicate that she made the decision to deny coverage on November 21, 2018, but Defendant did not formally deny the claim until November 28, 2018. *Id.* at 1. In the denial email, the Claims Specialist said that the claim was denied because water had "traveled through the ground," which was excluded under the policy. ECF No. 54-6. The denial letter that was mailed to Plaintiffs noted that the policy did not afford coverage for ground, surface, or flood waters. ECF No. 54-7.

The denial letter mailed to Plaintiffs provided the exclusion section under which Plaintiffs' claim was being denied. Specifically, the letter referred to the following policy exclusion:

**SECTION I – EXCLUSIONS**
1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
    **c. Water damage,** meaning:
    **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
    **(3)** Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

ECF No. 55-7. This language is quoted from the base policy, not the Special Provision section of the policy that is specific to West Virginia. *See* ECF No. 55-3, at 19.

Defendant attached a full copy of Plaintiffs' policy to their Motion to Dismiss. ECF No. 53-3. The full policy, including the Special Provisions specific to West Virginia, includes the following language:

**SECTION I – EXCLUSIONS**
3. **Water damage,** meaning:
    a.   **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
    **(2)** release of water held by a dam, levee, dike or by a water or flood control device or structure;

> **b.** Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

ECF No. 53-3, at 37. This is in the Special Provision section of the policy. *Id.* at 32.

Plaintiffs filed this action on June 28, 2019. Pursuant to this litigation, Plaintiffs hired Derek Spurlock, a Professional Engineer, to evaluate the damage to their property. *See* ECF No. 54-11. His investigation concluded that "the water causing damage to the [Plaintiffs'] property is coming from the water course, flowing in a certain direction in a regular, man-made channel upland from the [Plaintiffs'] property. The topography as it currently lays forces and directs the water from this water course onto the [Plaintiffs'] property and into the crawl space of the [Plaintiffs'] home." ECF No. 54-11, at 3.

At the Pretrial Conference on September 27, 2021, Defendant argued that Plaintiffs' water damage was not covered by their policy under the exclusion for the "release of water held by… a water or flood control device or structure," which is found in the Special Provisions policy specific to West Virginia. The prior communications with the Plaintiffs regarding the reasons for the denial of their claim and the throughout the course of the litigation did not refer to the Special Provisions policy, but rather, the base policy. This exclusionary language is not found in the base policy.

## LEGAL STANDARD

Under Rule 56 for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the

underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiffs seek a Declaratory Judgment asserting that Plaintiffs' losses were subject to insurance coverage under their policy (ECF No. 21 ¶ 33) and assert a breach of contract claim against Defendant, arguing that Defendant was contractually obligated to indemnify Plaintiffs for their losses, and therefore breached the contract by denying coverage (ECF No. 21 ¶¶ 40, 41). Inherent in both claims is the issue of whether the damage sustained by Plaintiffs is covered by the terms of the policy.

A court interpreting an insurance policy should give the language of the policy "its plain, ordinary meaning." *Murray v. State Farm Fire and Cas. Co.*, 509 S.E.2d 1, 6 (W. Va. 1998). Where the words of the policy are "clear and unambiguous," it is not the role of the court to judicially construct or interpret meaning, but rather, "full effect will be given to the plain meaning intended." *Id.* (quoting Syl., *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714 (W. Va. 1970)). When the language is ambiguous, or "reasonably susceptible to two different meanings," such

policies should be construed strictly against the insurer and in the favor of the insured party. *Id.* (citing Sly. Pt. 1, *Prete v. Merchs. Prop. Ins. Co. of In.*, 223 S.E.2d 441 (W. Va. 1976); *id.* (citing *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987)). Further, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." *Cherrington v. Erie Ins. Prop. and Cas. Co.*, 745 S.E.2d 508, 526 (W. Va. 2013) (quoting Syl. Pt.7, *Nat'l Mut. Ins. Co.*, 356 S.E.2d 488).

Both parties agree to the source of the damage to Plaintiffs' home—water from the watercourse. The question remains as to whether this damage is covered by Plaintiffs' insurance policy or whether it was excluded from coverage. Throughout the duration of this litigation, and in its dealings with Plaintiffs, Defendant has asserted that the damage to Plaintiffs' home is not covered under their insurance policy, citing to several different portions of the exclusion for water damage in both the base policy and in the Special Provisions specific to West Virginia. First, Defendant, through its Claims Resolution Specialist, emailed Plaintiff Mrs. Dow informing her that the water that damaged the home after traveling through the ground is considered ground water, which was excluded under the insurance policy. *See* ECF No. 54-6. Then, in its denial letter to Plaintiffs, Defendant determined that the policy did not afford coverage for "ground, surface, or flood water." *See* ECF No. 54-7. In the letter, Defendant cited policy language that explained the exclusions for water damage, including flood and surface water and water below the surface of the ground. *Id.* This policy language is in the base policy. Lastly, at the Pretrial Conference on September 27, 2021, Defendant cited to language in the policy under Special Provisions for West Virginia, which excluded coverage for the release of water held by a water control device or structure. The Court will now turn to the exclusions raised by Defendant to

determine whether the damage to Plaintiffs' property from the watercourse is excluded from coverage under the language of the policy.

    1.  <u>Water below the surface of the ground</u>

       Defendant first asserted that the water damaging Plaintiffs' home was ground water excluded under the policy. Plaintiffs point out that the term "ground water" itself is not found in the policy, but rather, the exclusionary language refers to "water below the surface of the ground." To support the assertion that the water is "water below the surface of the ground," Defendant relies on Plaintiffs' Complaint, which states that water had "permeated through the foundation brick and invaded into the crawl space under Plaintiffs' home." ECF No. 21 ¶ 18. Additionally, the Claims Resolution Specialist noted that she had a conversation with Plaintiff Mrs. Dow where Plaintiff said that the water was "traveling underground." ECF No. 54-5, at 2. However, in Plaintiff Mr. Dow's deposition, he testified that the water which was damaging the crawlspace of his home had never entered the ground itself, but rather, came across the property and then entered the crawl space. *See* ECF No. 58-6, at 3.

       Further, the parties agree to the assessment of Plaintiffs' expert hydrologist, Derek Spurlock. His assessment concluded that the topography of the land forces water from the man-made watercourse onto Plaintiffs' property and into the crawl space of their home. *See* ECF No. 54-11. His assessment does not indicate that the water traveled through the ground before reaching Plaintiffs' home.

       Although Defendant first indicated that the exclusion for water below the surface of the ground may apply, it is clear now that both parties agree with the assessment of Mr. Spurlock, who concluded that the water traveled, not below the surface of the ground, but across the land

and into Plaintiffs' home. At this point in the litigation, it is clear that the exclusion for "water below the surface of the ground" does not apply.

2. <u>Surface water exclusion</u>

Defendant asserts that the water damage to Plaintiffs' home is "surface water" excluded under the policy. Defendant argues that the policy language which excludes from coverage water damage that "is caused by or resulting from human or animal forces or any act of nature" means that the water that came from the watercourse qualifies as "surface water" and is excluded from the policy. ECF No. 53-3 at 37. To support this assertion, Defendant relies on *Erie Insurance Property and Casualty Co. v. Chaber*. 801 S.E.2d 207 (W. Va. 2017). In this opinion, the West Virginia Supreme Court cited favorably to *Citi Gas Convenience v. Utica Mutual Insurance Co.* to find that the policy exclusion for damages caused by both natural and man-made sources was unambiguous, and thus, a land movement caused by a man-made source was excluded under the policy. *Id.* at 213. Notably, *Citi Gas* involved a water damage claim which was denied under an insurance policy exclusion that included man-made surface water. *Citi Gas Convenience v. Utica Mutual Insurance Co.*, No. 15-6691, 2016 WL 492474, at *3–*4 (E.D. Penn. Feb. 9, 2016) The term "surface water" was not defined in this policy, nor did the court discuss a definition for "surface water" established by Pennsylvania case law. *See id.* at *3–*4. Instead, the court found that the language of the policy modified the term to include surface water from man-made sources. *Id.* at *4. In the Eastern District of Pennsylvania, man-made surface water can exist.

In West Virginia, however, there is an established definition for "surface water." "Surface water" is considered:

> water of casual, vagrant character, oozing through the soil, or diffusing and squandering over or under the surface, which, though usually and naturally flowing in known direction, has no banks or channel cut in the soil; coming from rain and snow, and occasional outbursts in time of freshet, descending from

> mountains or hills, and inundating the country; and the moisture of wet, spongy,
> springy, or boggy land.

Syl. Pt. 2, *Neal et ux v. Ohio River R. Co.*, 34 S.E. 914 (W. Va. 1899). On the other hand, a

watercourse has been defined as:

> [C]onsist[ing] of bed, bank, and water. Yet the water need not continually flow, as
> many streams are sometimes dry. There is a difference between a water course and
> an occasional outburst of water which, at times of freshet, from rain or snow,
> descends from the hills and inundates the country. To be a water course, it must
> appear that the water usually flows in a certain direction, and by a regular channel,
> with banks or sides.

*Id.* at Sly. Pt. 1. Here, the water which damaged Plaintiffs' property, which may have once been

considered "surface water," entered into a defined channel in the ground, becoming a

"watercourse." Several jurisdictions have found that once surface water enters a defined channel

or a watercourse, the water loses its character as "surface water." *See* 11 Couch on Ins. § 153:57

(3d ed. 2021); *Heller v. Fire Ins. Exch., a Div. of Farmers Ins. Grp.*, 800 P.2d 1006 (Colo.

1990) (en banc) (holding that water originating from natural runoff which was diverted into

man-made trenches lost is character as surface water); *M and M Corp. of S.C. v. Auto-Owners

Ins. Co.*, 701 S.E.2d 33 (S.C. 2010) (finding that once water had channeled into an uncompleted

stormwater drainage system, the water was no longer surface water and did not become surface

water again once it was discharged). Considering the definition of "surface water" and

"watercourse," it follows that once surface waters enter a watercourse, the water loses its

character as surface water and does not regain that character upon exiting the watercourse.

    The entire water damage exclusion in Plaintiffs' policy is modified by a clause that

indicates that the "exclusion applies whether the water damage is caused by or resulting from

human or animal forces or any act of nature." ECF No. 53-3, at 37. However, because West

Virginia has an established definition outlining the scope of what is considered "surface water,"

policy language cannot be used to expand this definition to include "man-made surface water." Under the terms of the *Neal* definitions for "surface water" and "watercourse," "man-made surface water" cannot exist. The modifier in the policy indicating that human sources of the water damage are excluded from coverage cannot apply to "surface water."

The water which damaged Plaintiffs' property cannot be considered "surface water" and thus is not excluded from coverage under the policy exclusion for "surface water."

3. <u>Water Control Device or Structure</u>

At the Pretrial Conference on September 27, 2021, Defendant asserted for the first time that the damage to Plaintiffs' property was excluded from coverage under the policy exclusion for the "release of water held by… a water or flood control device or structure," which is found in the Special Provisions policy specific to West Virginia. The issue of whether this exclusion applies to Plaintiffs' damages has been addressed briefly by Plaintiffs' and Defendant's Supplemental Memorandums for Summary Judgment. However, Plaintiffs argue that Defendant is precluded from asserting the "water control device or structure" exclusion under the doctrines of waiver and estoppel. The West Virginia Supreme Court has analyzed when an insurer has waived its right to rely on specific exclusionary language within an insurance policy and also when an insurer is estopped from relying on specific language in a policy. *Potesta v. U.S. Fidelity & Guar. Co.*, 504 S.E.2d 135 (W. Va. 1998).

a. <u>Waiver</u>

To establish waiver, the party against which waiver is sought must have demonstrated an intentional relinquishment of a known right, either expressly or impliedly. *Id.* at 142 (citing *Hoffman v. Wheeling Sav. & Loan Ass'n*, 57 S.E.2d 725, 735 (W. Va. 1950) ("'A waiver of legal rights will not be implied, except [on] clear and unmistakable proof of an intention to waive such

rights.'" (citation omitted))). Implied waiver has been applied where an insurer later raises a technical ground for exclusion of coverage; but implied waiver cannot be raised when the insurer raises an exclusion grounded in the non-existence of coverage. *See id*. at 143 (noting that implied waiver had been found where an insurer did not timely raise a 60-day time limit imposed on the insured and when an insurer was silent to the sufficiency of a notice of potential claims for ten months); *see Enoka v. AIG H.I. Ins. Co.*, 128 P.3d 850, 868 (Haw. 2006) (finding, relying on *Potesta*, that implied waiver can be invoked to prevent an insurer from later raising a technical or forfeiture ground for declining coverage, but that waiver cannot be invoked when the insurer's later denial is based on the non-existence of coverage).

The party asserting the waiver bears the burden of proving waiver. *Potesta*, 504 S.E.2d at 142. However, the party asserting the waiver does not have to show that they detrimentally relied or were prejudiced; rather, the focus of the inquiry is on the conduct of the insurer, the party against whom waiver is sought. *Id.* 142–43. A plaintiff must provide "clear and convincing evidence" that an insurer "knowingly and intelligently" waived its right to rely on the alternative exclusion. *Bailes v. Erie Ins. Prop. & Cas. Co.*, No. 3:09-0146, 2010 WL 358768, at *8 (S.D.W. Va. Jan. 25, 2010) (finding that because there was no showing of a knowing an intentional waiver, defendant insurer had not waived its right to rely on the previously unarticulated policy exclusion).

Plaintiffs argue that waiver applies here because Defendant has previously relied on the "surface water" and the "water below the surface of the ground" exclusions throughout the duration of the litigation, and only just recently asserted the "water control device or structure" exclusion. This, Plaintiffs argue, demonstrates that Defendant knowingly and intelligently waived its right to raise the "water control device or structure" exclusion. However, this Court has found

that simply because an exclusion was not previously asserted did not mean that an insurer had knowingly and intelligently waived their right to rely on the later asserted exclusionary language. *Bailes*, 2010 WL 358768, at *8. Thus, just because Defendant had not raised the "water control device or structure" exclusion until the hearing on September 27th does not mean that Defendant knowingly waived such exclusion. The Court also notes that all of the exclusionary language asserted by Defendant is under the same exclusion for "water damage." Further, as the "water control device or structure" exclusion Defendant raised is based on the non-existence of coverage, not based on a technicality, Defendant has likewise not impliedly waived this exclusion.

    b.  <u>Estoppel</u>

The doctrine of estoppel can be raised when an insured was "induced to act or refrain from acting to his/her detriment because of his/her reasonable reliance on the previously stated grounds for declination." *Potesta*, 504 S.E.2d at 144. Thus, the application of estoppel requires detrimental reliance. *Id.* at 143. Plaintiffs here argue that they relied on the language cited in Defendant's initial denial letter, which was the only exclusion relied upon by Defendant throughout the duration of the litigation up until September 27, 2021

However, whether Plaintiffs relied to their detriment or not, the *Potesta* court made clear that the principles of waiver and estoppel cannot be employed when doing so would extend coverage beyond the terms of an insurance contract. *Potesta*, 504 S.E.2d at 147; *Bailes*, 2010 WL 358768, at *8. This means that the Court cannot apply these principles when doing so would result in the coverage of damages not included—or specifically excluded—in the policy. The exclusion at issue here is not one of a technical nature. It is grounded in the non-existence of coverage for certain kinds of water damages. The exclusion specifically excludes coverage for damages caused by the release of water held by a water control device or structure. If the Court

were to estop Defendant from asserting the "water control device or structure," the result could be the coverage of damages that was expressly excluded in the written contract between the parties. This would essentially amount to an impermissible re-writing of the contract, and therefore, the Court cannot apply the principles of estoppel to prohibit Defendant from asserting the "water control device or structure" exclusion.

There are exceptions to the limitations of waiver and estoppel which allow for the application of these principles even when doing so would extend coverage beyond the scope of the insurance contract. *Potesta*, 504 S.E.2d at 150. The first is when an insurer "made a misrepresentation at the policy's inception that resulted in the insured being prohibited from procuring the coverage s/he desired." *Id.* at 148. Here, no such misrepresentation was made at the inception of the policy, and so this exception is not applicable.

The second is "when an insurer has represented the insured without a reservation of rights." *Id.* The *Potesta* court went on to cite several cases which described situations where an insurer represented an insured in litigation for some time, did not assert a reservation of rights, but later asserted alternative policy exclusions that were not initially raised. *Id.* (citing *Pacific Indem. Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169 (5th Cir. 1973) (finding estoppel appropriate when insurer did not assert a reservation of rights, had represented an insured in an action four one and a half years, and then raised a non-coverage defense, withdrawing from the action); *Ins. Co. of N. Am. v. Nat'l Steel Serv. Ctr., Inc.*, 391 F. Supp. 512 (N.D.W. Va. 1975) (finding estoppel appropriate where an insurer provided unconditional defense for an insured but then asserted, after four years, that coverage did not exist); *Gibraltar Ins. Co. v. Varkalis*, 263 N.E.2d 823 (Ill. 1970) (finding estoppel appropriate where the insurer provided unqualified defense for an insured for over a year but then asserted a coverage based defense).

-13-

Plaintiffs here argue that this exception is appropriately applied to this matter. Plaintiffs point out that the 2018 denial letter does not include a reservation of rights which would have put Plaintiffs on notice of Defendant's right to rely on alternative policy exclusions. However, the reservation of rights exception applies only to insurers defending an insured under a liability policy. This exception is immaterial here.

The third exception is when the insurer has acted in bad faith. *Potesta*, 504 S.E.2d at 149. In West Virginia, bad faith has been found where an insurer refuses to settle within the policy limits. Syl. Pt. 7, *Marshall v. Saseen*, 450 S.E.2d 791 (W. Va. 1994). Bad faith has also been found when an insurer, knowing a claim was proper, "willfully, maliciously, and intentionally denied" the claim. Syl. Pt. 5, in part, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996) (citing *Berry v. Nationwide Mut. Fire Ins. Co.*, 381 S.E.2d 367, 375 (W. Va. 1989)).

Plaintiffs allege that Defendant has engaged in bad faith conduct. Looking to the circumstances, Plaintiffs argue that the timing and manner in which Defendant asserted a new basis for denial, in addition to Defendant's failure to be forthright, constitute the bad faith for which this Court should estop Defendant from asserting the "water control device or structure" exclusion. The Court, although not applying the principle of estoppel, finds that the Defendant's assertion of the different phrase of the water damage exclusion constitutes unfair surprise. Plaintiffs should be permitted to engage in discovery and additional briefing with respect to this issue.

Plaintiffs also argue that the Court should apply the principle of judicial estoppel to prohibit Defendant from asserting the "water control device or structure" exclusion. This doctrine can be applied when:

> (1) The party assumed a position on the issue that is clearly inconsistent with a
> position taken in a previous case, or with a position taken earlier in the same case;

(2) the positions were taken in proceedings involving the same adverse party; (3)
the party taking the inconsistent positions received some benefit from his/her
original position; and (4) the original position misled the adverse party so that
allowing the estopped party to change his/her position would injuriously affect the
adverse party and the integrity of the judicial process.

Syl. Pt. 4, *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 825 S.E.2d 95, 97 (W. Va.

2019).

Although Defendant has asserted a different phrase of the water damage exclusion,

throughout the duration of this litigation, Defendant has consistently denied Plaintiffs' claim

under the language of the water damage exclusion. The assertion of the new phrase does not

amount to the Court's application of judicial estoppel.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary

Judgment. ECF No. 54.

The Court also **DENIES** Defendant's Motion for Summary Judgment as premature. ECF

No. 53. There remains the issue of whether the exclusion for water damage caused by the release

of water held by a "water control device or structure" applies to Plaintiffs' loss. Therefore, the

Court will permit the reopening of discovery on this issue.

The Court **DIRECTS** the parties to meet and confer and to submit a new Plan pursuant to

Federal Rule 26(f) on or before Friday, December 3, 2021.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented parties.

ENTER:        November 18, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE