IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOSHUA DOW and
RACHEL DOW,

          Plaintiffs,

v.                                        CIVIL ACTION NO.  3:19-0486

LIBERTY INSURANCE COMPANY,

          Defendant.

**AMENDED MEMORANDUM OPINION AND ORDER**

Contemporaneously, the Court **GRANTS** Plaintiffs' Motion to Alter or Amend Judgment. ECF No. 112. Accordingly, the Court **AMENDS** its Memorandum Opinion and Order, ECF No. 109. For the following reasons, the Court **DENIES** Plaintiffs' Renewed Motion for Partial Summary Judgment (ECF No. 100) and **GRANTS,** in part, and **DENIES,** in part, Defendant's Renewed Motion for Summary Judgment (ECF No. 99).

**BACKGROUND**

Plaintiffs Joshua and Rachel Dow purchased their home at 1017 Moss Creek Drive in Hurricane, WV in March of 2018. *Am. Compl.* ¶¶ 8, 12, ECF No. 21. This property is contiguous to the Valley Park Wave Pool. *Id.* ¶ 13. Before purchasing the home, Plaintiffs were required by their lender to conduct an appraisal and a professional inspection of their home. *See Pls.' Mot. for Summ. J. Exs. A & B*, ECF Nos. 54-1, 54-2. These inspections showed that there was no evidence of prior or historical water-related damage in the crawlspace area. *See Ex. A* at 22, ECF No. 54-1. After Plaintiffs purchased the home, they entered into a contract for first party insurance with Defendant Liberty Insurance Company (Policy No. H37-281-661959-4083,

1

effective 3/19/2018 through 3/19/2019). *See Ex. C,* ECF No. 54-3.

As of June 2018, Plaintiffs noticed water entering their property and leaking into the crawl space of their home. *Am. Compl.* ¶ 18. The water flowed from the edge of a ditch on an adjoining property into their yard. *See Def.'s Mot. for Summ. J. Ex. B*, ECF No. 53-2. This ditch ended 20-30 feet from Plaintiffs' property and had carried water downhill toward the river for several years, even before the nearby Wave Park was built. *See Def.'s Resp. Ex. A* at 18–19, ECF No. 59-1. For many years, this ditch carried water without damaging Plaintiffs' home. *Am. Compl.* ¶ 15. However, the Putnam County Commission built a maintenance building on the property at the Wave Park in 2018, which raised the elevation of the land. *Id.* ¶ 16. Construction on the maintenance building ended in March of 2018. *Id.* ¶ 18. Because of the elevation change, heavy rain and water problems at the Wave Park overwhelmed the ditch and forced water into Plaintiffs' yard, which entered the crawl space of their home. *Id.* ¶ 20.

On November 6, 2018, Plaintiffs sent a letter to Defendant notifying them of the water damage to their home and brought a claim under their insurance policy. *See Ex. D*, ECF No. 54-4. The Claim Diary maintained by Defendant showed that the loss was reviewed and the file opened on November 15, 2018. *Ex. E* at 2, ECF No. 54-5. Plaintiff Mrs. Dow spoke to a Claims Resolution Specialist and explained how the water was entering Plaintiffs' property through the adjoining property due to activities at the Wave Park. *Id.* She also explained that Putnam County claimed they were not responsible for the damage. *Id.* The Claims Specialist then called and left a voice message for the Commission to discuss the damage to Plaintiffs' home. *Id.* She left a message with Jared Dean's secretary, who advised the Claims Specialist that the County was in litigation over the matter. *Id.* The Claims Specialist's notes indicate that she made the decision to deny coverage

on November 21, 2018, but Defendant did not formally deny the claim until November 28, 2018. *Id.* at 1. In the denial email, the Claims Specialist said that the claim was denied because water had "traveled through the ground," which was excluded under the policy. *Ex. F*, ECF No. 54-6. The denial letter that was mailed to Plaintiffs noted that the policy did not afford coverage for ground, surface, or flood waters. *Ex. G*, ECF No. 54-7.

The denial letter mailed to Plaintiffs provided the exclusion section under which Plaintiffs' claim was being denied. Specifically, the letter referred to the following policy exclusion:

**SECTION I – EXCLUSIONS**
1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
    **c. Water damage,** meaning:
    **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
    **(3)** Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

*Id.*; *Ex. C* at 19, ECF No. 53-3. This language is quoted from the base policy, not the Special Provision section of the policy that is specific to West Virginia. *See Ex. C* at 19, ECF No. 53-3.

Defendant attached a full copy of Plaintiffs' policy to their Motion to Dismiss. *Id*. The full policy, including the Special Provisions specific to West Virginia, includes the following language:

**SECTION I – EXCLUSIONS**
   **3. Water damage,** meaning:
      **a.** **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
           **(2)** release of water held by a dam, levee, dike or by a water or flood control device or structure;
      **b.** Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

*Id.* at 37. This is in the Special Provision section of the policy. *Id.* at 32.

Plaintiffs filed this action on June 28, 2019. Pursuant to this litigation, Plaintiffs hired Derek Spurlock, a Professional Engineer, to evaluate the damage to their property. *See Ex. K*, ECF No. 54-11. His investigation concluded that "the water causing damage to the [Plaintiffs'] property is coming from the water course, flowing in a certain direction in a regular, man-made channel upland from the [Plaintiffs'] property. The topography as it currently lays forces and directs the water from this water course onto the [Plaintiffs'] property and into the crawl space of the [Plaintiffs'] home." *Id*. at 3.

At the Pretrial Conference on September 27, 2021, Defendant argued that Plaintiffs' water damage was not covered by their policy under the exclusion for the "release of water held by… a water or flood control device or structure," which is found in the Special Provisions policy specific to West Virginia. The prior communications with the Plaintiffs regarding the reasons for the denial of their claim and the throughout the course of the litigation did not refer to the Special Provisions policy, but rather, the base policy. This exclusionary language is not found in the base policy.

The Court denied both the Plaintiffs' Partial Motion for Summary Judgment and Defendant's Motion for Summary Judgment on November 18, 2021. ECF No. 86. The Court re-opened discovery on the issue of whether the exclusion for water damage caused by the release of water held by a "water control device or structure" applies to Plaintiffs' loss.

On April 1, 2022, Plaintiffs filed a Renewed Motion for Partial Summary Judgment, ECF No. 100, and Defendant filed a Renewed Motion for Summary Judgment. ECF No. 99.

**LEGAL STANDARD**

Under Rule 56 for summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh

the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiffs seek a Declaratory Judgment asserting that their losses were subject to insurance coverage under their policy, *Am. Compl.* ¶ 33, and assert a breach of contract claim against Defendant, arguing that Defendant was contractually obligated to indemnify Plaintiffs for their losses, and therefore breached the contract by denying coverage, *id*. ¶¶ 40, 41. Inherent in both claims is the issue of whether the damage sustained by Plaintiffs is covered by the terms of the policy. Plaintiffs also assert both statutory and common law bad faith, *id*. ¶¶ 42-53; these claims will be addressed after this Opinion analyzes the existence of insurance coverage.

"Under West Virginia law, the plaintiff must prove both the existence of an applicable insurance contract and its material terms. It is only when the plaintiffs have established a prima facie case of coverage that the burden shifts to the defendants." *Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*, 682 S.E.2d 566, 574 (W. Va. 2009) (citing *Payne v. Weston*,

466 S.E.2d 161, 165 (W. Va. 1995)). When a policyholder shows that a loss occurred while an insurance policy was in force, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 3, *Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook*, 557 S.E.2d 801, 803 (W. Va. 2001) (citing Syl. pt. 7, *Nat. Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987), overruled on other grounds by *Parsons v. Halliburton Energy Servs. Inc.*, 785 S.E.2d 844 (W. Va. 2016)). The insurer must also prove that the allegedly applicable exclusion is valid, unambiguous, and substantiated.

    1. <u>Validity of the Water Damage Exclusion</u>

The insurer seeking to deny coverage based on an exclusion has the burden of proving the validity of that exclusion. *See* Syl. pt. 7, *McMahon & Sons, Inc.*, 356 S.E.2d 488. Plaintiffs, relying on *Joy Technologies v. Liberty Mutual Insurance Company*, originally asserted that Defendant has not met its duty to prove that the Water Damage Exclusion utilized to preclude coverage is valid. Although at the Motions Hearing held on June 29, 2022, Plaintiffs retracted that argument and did not dispute the validity of the provision, the Court will discuss the basis for the argument, as it pertains to Plaintiffs' assertion that the exclusion is ambiguous.

In *Joy Technologies*, the defendant insurer represented to the West Virginia Insurance Commissioner that the submitted updates to the policy language only clarified terminology in the existing policy; it did not exclude any risk which was covered by the original policy. 421 S.E.2d 493, 499 (W. Va. 1992). However, this representation was inconsistent with the exclusion that was used against the insured to deny coverage. *Id*. The exclusion that the defendant insurer attempted to utilize precluded coverage when the base policy would have afforded coverage. *Id*. The West Virginia Supreme Court did not allow the exclusion to be utilized against the insured. *Id*.

To determine the validity of the exclusionary language sought to be deployed here against Plaintiffs, it is important to understand the process by which the exclusion for water damage caused by the release of water from a "water control device or structure" became included in the policy. Defendant submitted the West Virginia Water Damage Exclusion to the West Virginia Insurance Commissioner in 2016. *Def.'s Resp. to Pls.' Renewed Mot. for Summ. J. Ex. E* at 4, ECF No. 104-5. There was no rate impact associated with this change. *Id.* at 5. Defendant's designee Demmon indicated that this happens when the insurance company's rates are inadequate for a specific loss; when this happens, the company's options are to either increase rates or reduce coverage. *Id.* at 5–6. This results in "rate adequacy" for a specific loss, in this case, water damage exposure. *Id.* at 6. Rate changes are not made unless the changes made impact enough customers. *Id.* When the changes are significant enough, the company can submit a separate rate filing to update policy rates, or the regulator can also request a rate filing. *Id.* at 8–9.

Plaintiffs originally asserted that the issue before the Court is similar to *Joy Technologies*. Here, Defendant submitted the Water Damage Exclusion to the West Virginia Insurance Commission as a rate neutral change, meaning that the rates charged to policyholders did not change. Defendant was paying more for water loss claims than it had planned to under the original rating of the policy, and the new exclusionary language would theoretically result in the exclusion of more water damage claims. Defendant's designee Demmon asserted that, despite the policy change potentially resulting in less coverage, there was no required rate change.

In *Joy Technologies*, Liberty Mutual represented to the Insurance Commissioner that the changes to its policy were mere clarifications of the base policy; the insurer did not indicate that

7

the new language would limit coverage any more so than the base policy. 421 S.E.2d at 499. The Commissioner relied on these representations to approve the changes to the policy. Thus, here the representations made to the Commissioner regarding the Water Damage Exclusion are more important to the Court's analysis of its validity than those in *Joy Technologies*.

In the Summary of Changes Form filed by Defendant, it indicated that the exclusion for water damage is "updated to specifically state that seiche, storm surge and water released from a dam, levee or dike are not covered. Water driven by wind is updated to specifically include hurricane or similar storms." Notably, the Full Summary of Changes does not include the exclusion for the release of water held by a water control device or structure—Defendant omitted this language from its summary. However, Defendant did represent to the Insurance Commissioner that the changes made to the policy were additional exclusions. Also, Defendant asserted that it submitted to the Insurance Commissioner a complete, red-lined version of the new exclusionary language which included the terms "water control device or structure." The filing identified specific sources of water which were excluded from coverage—this is an important distinction from *Joy Technologies*. In *Joy Technologies*, the Insurance Commissioner was unaware that the new language would provide an additional exclusion to the policy that was not in any other policy section. 421 S.E.2d at 499. The new language explicitly excluded coverage for risks that would have been covered by the base policy. *Id*. Here, Defendant specifically identified additional exclusions that would further limit the number of cognizable water damage claims. Further, there already existed a broad exclusion for water damage in the base policy, demonstrating Defendant's intent to widely exclude coverage for water damage in its insurance policies. Although Defendant omitted the particular phrase "water control device or structure" from its Summary filing, it is essentially synonymous with the specifically stated sources of water damage,

such as "dam," "levee," and "dike," and Defendant indicates it was included in the red-lined version of the policy submitted. Its inclusion is consistent with Defendant's clear intent to broadly exclude water damage from sources outside of an insured property.

Because the Insurance Commissioner was aware of the additional exclusions Defendant sought to include in the policy, this Court finds that the exclusion utilized by Defendant to preclude coverage for the water damage to Plaintiffs' home is valid.

2. Ambiguity of the Water Damage Exclusion

A court interpreting an insurance policy should give the language of the policy "its plain, ordinary meaning." *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 6 (W. Va. 1998) (quoting Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33 (W. Va. 1986)). Where the words of the policy are "clear and unambiguous," it is not the role of the court to judicially construct or interpret meaning, but rather, "full effect will be given to the plain meaning intended." *Id.* (quoting Syl., *Keffer v. Prudential Ins. Co. of Am.*, 172 S.E.2d 714 (W. Va. 1970)). When the language is ambiguous, or "reasonably susceptible to two different meanings," such policies should be construed strictly against the insurer and in the favor of the insured party. *Id.* (citing Sly. pt. 1, *Prete v. Merchs. Prop. Ins. Co. of In.*, 223 S.E.2d 441 (W. Va. 1976) and *McMahon & Sons, Inc.*, 356 S.E.2d 488). Ultimately, "a court should read policy provisions to avoid ambiguities and not torture language to create them." *Payne*, 466 S.E.2d at 166. However, if a court does consider language ambiguous and chooses to construe that ambiguous exclusionary language, those ambiguous terms are "not construed broadly but are restricted to a sense analogous to the specific words" accompanying the ambiguous words. *Murray*, 509 S.E.2d at 9.

Plaintiff argues that Defendant has failed to prove that the phrase "water control device or structure" is unambiguous. This phrase is not defined in the policy—nor are the other, more specific terms of the exclusion, such as "dam," "levee," or "dike." Plaintiff questioned Defendant's designee Beaudette concerning the meaning of the phrase "water control device or structure," and he defined it as "any type of manmade device used to control the release of water." *Ex. E* at 4, ECF No. 100-5. He indicated that this definition is both is his own, personal definition as well as Defendant's official position concerning the phrase. *Id.* at 6. Further, there is no available guidance for policyholders regarding the meanings of these policy phrases. *Id.* at 10.

However, it is clear to the Court that the plain, ordinary meaning of the words leaves the meaning of this exclusionary policy language clear. First, the reference to a "water device or structure" must be read in conjunction with the other, specific terms in the exclusion: "dam," "levee," and "dike." The Court also interprets the phrase in the context of the base policy exclusion for water damage. It is clear that the policy intended to preclude coverage for damage from water external, whether naturally occurring or not. Standing alone, the phrase "water control device or structure" may be ambiguous, but the Court must read the phrase in the context of the entire exclusionary provision, including the underlying base policy's water damage exclusion, and finds that such a term is not ambiguous as applied to Plaintiffs' loss here.

Plaintiffs' expert described the water damage to Plaintiffs' home resulting from water flowing from upland of Plaintiffs' property via a well-defined ditch (a water course). *Ex. C* at 3, ECF No. 104-3. The expert describes the water course as a man-made channel which was "built to convey water" from the area upland of Plaintiffs' property. *Id.* The water "flowed in a certain direction, in a regular, man-made channel." *Id.* This channel was designed to capture water on the hillside and control it. The purpose of its creation was to gather the water into the watercourse to

stop it from inundating the surrounding properties. Without torturing the exclusion language, it is clear that the water course described by Plaintiffs' expert is a "water control device or structure." The water causing the damage is external to Plaintiffs' property; it was channeled and controlled; and ultimately, it was released from the watercourse and damaged Plaintiffs' property. Thus, the Court finds that the language of the exclusion is unambiguous, and as applied, precludes coverage for the damage to Plaintiffs' home.

3. <u>Defendant proving facts</u>

"An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 526 (W. Va. 2013) (quoting Syl. pt. 7, *Nat'l Mut. Ins. Co.*, 356 S.E.2d 488).

Plaintiffs argue that Defendant has not independently proved or discovered facts which show that the exclusion it asserts against Plaintiffs applies to their loss. However, the fact that it is Plaintiffs' expert's testimony that supports the exclusion of coverage has no bearing on the application of that testimony to the analysis of summary judgment. The Court evaluates all of the evidence before it in its analysis of the summary judgment motion. The Court can, and properly does, consider Plaintiffs' expert testimony, and the expert testimony supports the exclusion of coverage.

4. <u>Defendant failed to inform Plaintiffs as to why the loss was denied</u>

Lastly, Plaintiffs argue that Defendant failed to comply with West Virginia law with regard to communicating the exclusion upon which it denied coverage. They argue that there are state rules requiring an insurer to communicate in writing the specific exclusion relied upon for denial of a claim and that Defendant has not done so. However, as noted by this Court in its previous

opinion on summary judgment, the Court cannot preclude or estop Defendants from utilizing the exclusion to deny coverage when doing so would result in the coverage of damages that were expressly excluded in the written contract between the parties. *See Potesta v. U.S. Fidelity & Guar. Co.*, 504 S.E.2d 135, 147 (W. Va. 1998).

   5. Bad Faith Claims

While the foregoing discussion determines that Plaintiffs do not prevail on their insurance claims, this does not extinguish their Count IV claim under the Unfair Trade Practices Act ("UTPA"). Count III, however—concerning common law bad faith—cannot continue where Plaintiffs have not substantially prevailed in their underlying insurance dispute.

Plaintiffs have brought a common law bad faith claim in Count III and a statutory bad faith claim in Count IV. The differing predicate conditions for bringing suit in statutory and common law bad faith insurance cases are well established. *See Jenkins v. J.C. Penney Casualty Insurance Company*, 280 S.E.2d 251 (W. Va. 1981) (regarding statutory bad faith in insurance cases); *Hayseeds, Inc. v. State Farm Fire & Casualty*, 352 S.E.2d 73 (W. Va. 1986) (regarding common law bad faith in insurance cases); Syl. Pt. 7, *Jorache Enters., Inc. v. Nat'l Union Fire Ins.*, 513 S.E.2d 692 (W. Va. 1998) (comparing the two). While a *Hayseeds* common law bad faith claim requires the plaintiff to have substantially prevailed in the underlying insurance dispute, a *Jenkins* statutory-based claim is not dependent upon a positive disposition of the underlying insurance claim. *Jorache*, 513 S.E.2d at 712 (quoting Syl. Pt. 9, *McCormick v. Allstate Ins. Co.*, 475 S.E.2d 507, 518 (W. Va. 1996)). In *Jordache*, the Supreme Court of Appeals of West Virginia held that a UTPA claim was not subject to res judicata or summary judgment where a previous action found the underlying insurance policy did not afford coverage. *Id*. Since *Jordache*, the Supreme Court of Appeals of West Virginia has decided at least one other UTPA case in which a claim brought under an insurance policy was not covered by that policy. *See Aluise v. Nationwide Mut. Fire Ins.*, 625

S.E.2d 260, 271 (W. Va. 2005). Accordingly, Plaintiffs' UTPA claim is not extinguished by this Court's finding that their insurance policy does not cover the water damage to their property. Plaintiffs' Count III *Hayseeds* claim cannot proceed, however, now that the Court has found Plaintiffs' underlying insurance claim to be meritless.

Defendant has motioned for summary judgment on all of Plaintiffs' claims. However, it has only briefly addressed Plaintiffs' UTPA claim in a conclusory fashion. Defendant merely asserted that were the Court to find in its favor regarding the underlying insurance dispute, then the UPTA claim would fail as a matter of law. *Mem. in Supp. of Def.'s Renewed Mot. for Summ. J.* at 9-10, ECF No. 102. As discussed above, this is an incorrect interpretation of West Virginia law. Accordingly, Defendant has not met its burden of demonstrating that there are no material facts in dispute with regards to this claim, nor that it is entitled to judgment as a matter of law.

## CONCLUSION

This Court is sympathetic to Plaintiffs and the hardships they've experienced due to the damage to their property. Unfortunately, coverage for these water damages is not afforded under their insurance policy.

For the foregoing reasons, Plaintiffs' Renewed Partial Motion for Summary Judgment is **DENIED**. ECF No. 100. Defendant's Renewed Motion for Summary Judgment (ECF No. 99) is **GRANTED** with regards to Counts I-III of Plaintiffs' Amended Complaint and **DENIED** with regards to Count IV of Plaintiff's Amended Complaint.

ENTER: December 1, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE